UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES STEWART                                            CIVIL ACTION

VERSUS                                                     NUMBER: 16-13460

JEFF WILLIAMS, ET AL.                                      SECTION: "B"(5)

**REPORT AND RECOMMENDATION**

Presently before the Court are the following motions: (1) the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction of Defendants, Major Jeff Williams, Captain Frank Cleland, and Lieutenant Shane Ladner (rec. doc. 22) and, (2) the Rule 12(b)(6) motion to dismiss for failure to state a claim of Defendants, Lieutenant Wade Rigdon, Sergeant Jonathan Tynes, Sergeant Jules Herbert, Sergeant Brian Powell, and Nurse Jeff Goff. (Rec. doc. 23). Plaintiff has filed a memorandum in opposition to the first of those two motions. (Rec. doc. 24). For the reasons that follow, it is recommended that the Defendants' motions to dismiss be granted.

Charles Stewart, Plaintiff herein, is an inmate of the Rayburn Correctional Center ("RCC") in Angie, Louisiana. He filed the above-captioned 42 U.S.C. §1983 proceeding against the eight Defendants noted above, all correctional officers at RCC, concerning a series of events that occurred on July 29, 2015 in which Plaintiff alleges that he was subjected to several incidents of excessive force and was thereafter denied needed medical care. (Rec. doc. 1). A summary of the rather lengthy allegations made by Plaintiff follows.

Plaintiff begins by alleging that on the morning of July 29, 2015, Major Williams, Lieutenant Rigdon, Sergeant Tynes, and Sergeant Herbert approached Plaintiff's cell "... to initiate the beginning of their conspiracies to retaliate against me for two previous incidents

that accrued (sic) on 7-26-15 ... and also on 7-27-15 ..." (Rec. doc. 1, p. 8).[1] At the time, Plaintiff states that he was on extreme suicide watch in two-point restraints that anchored one of his hands to the bed. Upon entering his cell, Plaintiff alleges that "... Sgt. Herbert approached me in a reckless, malicious and sadistic manner without any provocation from ... [Plaintiff] at all" and subjected Plaintiff to the "brutality" of having a spit mask put on him. (*Id.*). Plaintiff states that he "... was [then] escorted out of ... [his] cell in a very hysterical manner to be placed in the shower." (*Id.*). Around this time, Plaintiff indicates that he overheard Major Williams advise an unidentified party over the phone that he "... can not get him (Offender Stewart) to act out nor resist." (*Id.*). The four noted correctional officials then removed Plaintiff from the shower and returned him to his cell. (*Id.* at pp. 8-9).

After Plaintiff had been returned to his cell, he alleges that Major Williams proclaimed "bitch it isn't over yet" and then began spraying him with a chemical agent to the right side

---

[1] Plaintiff conveniently attaches to his complaint a copy of the Disciplinary Reports that were generated as a result of these two prior incidents. In the first one, dated July 26, 2015, the reporting official, Lieutenant Shane Ladner, recalled an incident from that day in which Plaintiff refused the verbal orders of Captain Cleland and Lieutenant Rigdon to stand up and walk to his cell after being examined by a nurse. Plaintiff was eventually lifted in an attempt to return him to his cell, at which point he began to kick his legs and resist. Lieutenant Ladner then joined in the effort to physically carry Plaintiff back to his cell who at some point kicked Ladner twice in the abdomen. Major Williams was subsequently notified of the incident and Plaintiff was charged with a violation of the RCC's defiance rule. (Rec. doc. 1, p. 33).

In the second Disciplinary Report, the reporting official, Lieutenant Brian Brumfield, related that on July 27, 2015, CSM Charles Griffith and Sergeant Tommy Spencer entered Plaintiff's cell, who was at that time on extreme suicide watch in four-point restraints, for the purpose of conducting a cell search. While Plaintiff was being removed from his cell he informed Sergeant Spencer that he had urinated on himself and was accordingly escorted to the shower area to be cleaned up. Sometime later, EMT Noah arrived on Plaintiff's tier to make sick call rounds, with Plaintiff being included among the inmates to be seen. In furtherance of that evaluation, Sergeant Goings escorted Plaintiff off the tier to the lobby area and instructed him to take a seat. While EMT Noah was in the process of making his rounds, Plaintiff rose from his chair and struck Noah in the neck and facial area, rendering him unconscious. Sergeant Goings then ordered Plaintiff to the ground and Lieutenant Brumfield radioed for assistance with a total of seven correctional and medical/mental health officials responding, none of whom are named as Defendants in this proceeding. Plaintiff was ultimately returned to his cell and placed in four-point restraints and Major Kennedy was notified of the incident. (Rec. doc. 1, p. 32).

Based upon a review of these two Disciplinary Reports, it thus appears that of the four officials whom Plaintiff alleges entered his cell on July 29, 2015 as part of a retaliatory conspiracy, only two of them, Lieutenant Rigdon and Major Williams, were involved in either of the two prior incidents and Williams' involvement in the July 26, 2015 incident was limited to simply being notified of the occurrence after the fact.

of his face and ear without justification. (*Id.* at p. 9). Plaintiff was then ordered to stand, face the back of his cell, and walk backwards to the cell bars to retrieve and put his "spit mask" back on, orders that Plaintiff indicates he readily complied with. (*Id.*). After doing so, Plaintiff alleges that Major Williams directed him to turn around and again unjustifiably sprayed him with chemical agent in the face. (*Id.*). Plaintiff states that he was ordered back up to the cell bars again, was restrained, and was escorted to the shower. (*Id.*). Once there, Plaintiff relates that Major Williams began spraying him again in the back of the head without justification. (*Id.*). Throughout this time, Plaintiff charges Major Williams with failing to follow Department of Corrections ("DOC") protocol or American Correctional Association ("ACA") standards governing the use of force against unstable offenders like himself in neglecting to contact medical or mental health officials as is purportedly mandated. (*Id.* at pp. 9-10).

Later that morning, Plaintiff alleges that he was told by another inmate, Eric Lewis, that Lewis had overheard Major Williams, Captain Cleland, Lieutenant Ladner, Nurse Goff, and Sergeant Powell "… conspiring with each other about how they were going to get the restraint chair for Offender Charles Stewart, and how they w[ere] [going] to need to dust it off because it was not used in a while." (*Id.* at p. 10). Upon asking Sergeant Tynes to verify that information, Plaintiff was allegedly told "yeah, and a lot more than that's going down before they put you in that chair" and that he should be ready for "call out" after the midday meal was served. (*Id.*).

Some time later, Plaintiff was ordered to the bars of his cell to be restrained and was thereafter escorted out of his cell and brought to the "interlock" where Major Williams and Lieutenant placed him "… into escort position without any further altercations." (*Id.* at p.

11). As Plaintiff was being escorted outside approaching the entrance of the chapel, Lt. Rigdon shouted, "stop resisting, stop resisting!' (*Id.*). At that moment, Plaintiff states that Major Williams "clipped" him from behind and brought him down to the pavement, whereupon Williams began to "scrub" Plaintiff's face on the concrete while repeatedly smashing Plaintiff's face and head, stating, "[h]ere comes the man you kicked the other day." (*Id.*). Plaintiff alleges that he looked up to see Lieutenant Ladner approaching who proceeded to kick Plaintiff on the top of the head several times with Captain Cleland joining in by punching and kicking Plaintiff on the right side of the head and body. (*Id.*). Plaintiff states that he was "violently escorted" to the RCC Infirmary where Sergeant Powell queried, "[w]ho all did Offender Stewart resist?" (*Id.*).

Plaintiff alleges that he was then brought down the hallway to the location of the "restraint chair" where he was reportedly advised by Major Williams that "the restraint chair has been approved by the Warden." (*Id.* at pp. 11-12). Plaintiff states that he was strapped to the chair and his blood was drawn by an unidentified female nurse while Nurse Goff checked his vital signs. (*Id.* at p. 12). Despite these efforts, Plaintiff alleges that "not once has my injuries been treated or, has the medical staff shown any concern for them" despite bruising, swelling, and other trauma to his head and face. (*Id.*). Photographs of Plaintiff's face were subsequently taken by Lieutenant Odom without removing the "spit mask" and thus covering most of the damage that had been inflicted. (*Id.*).

Plaintiff charges all of the named Defendants with failing to protect him from the use of excessive force and otherwise failing to intervene not only from the infliction of cruel and unusual punishment, but in the provision of adequate and proper medical care, all in violation of the Eighth and Fourteenth Amendments and state law. (*Id.* at pp. 12-13).

Plaintiff sues all of the Defendants in their individual and official capacities. (*Id.* at p. 7). He seeks declaratory relief declaring that the Defendants' acts and omissions were violative of various federal and state laws, compensatory and punitive damages, and attorney's fees under 42 U.S.C. §1998 notwithstanding his *pro se* status. (*Id.* at pp. 7, 27-31).

By way of the first of the two motions presently before the Court, the three moving Defendants seek the dismissal of Plaintiff's claims for monetary damages against them in their official capacity, arguing that state officials sued in such a capacity for such relief are not "persons" within the meaning of §1983 and that such claims are also barred by the sovereign immunity that they enjoy. (Rec. doc. 22). In his "motion of objections" filed in response to Defendants' motion, Plaintiff recognizes the distinction between claims against state officials in their individual as opposed to official capacities and argues that the Eleventh Amendment does not bar suits for declaratory or injunctive relief or suits for monetary damages against state officials in their individual capacity. (Rec. doc. 24).

As Plaintiff should know by virtue of one of the various lawsuits he has previously litigated in this forum, "[t]o the extent that [P]laintiff is seeking monetary damages against the [D]efendants in their official capacities, any such claim clearly must be dismissed." *Stewart v. Warner*, No. 13-CV-4759, 2014 WL 3498165 at *3 (E.D. La. Jul. 15, 2014).[2/] Just as was the case in that prior suit, "[t]he [D]efendants [in this case] are state employees working at the B.B. "Sixty" Rayburn Correctional Center, a prison operated by the Louisiana Department of Public Safety and Corrections." *Id.* With respect to such individuals, the law

---

[2/] In that case, Plaintiff challenged his placement on suicide watch after he smeared feces all over his cell on several occasions in an attempt to avoid perceived threats of retaliatory, physical harm against him by prison officials. *Stewart v. Warner*, No. 13-CV-4759, 2014 WL 3498165 (E.D. La. Jul. 15, 2014). That case was disposed of on a Rule 12(c) motion for judgment on the pleadings as the Defendants had already filed an answer by the time that they filed a Rule 12(b)(6) motion to dismiss. *Id.*

5

is clear that "[s]tate employees sued in their official capacities for monetary damages simply are not considered "persons" subject to suit under 42 U.S.C. §1983." (*Id.*) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989)(and other cases). As the Court in *Stewart* also observed, "[a]dditionally, because a claim against a state employee in [his or] her official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment." *Id.* (citing *Williams v. Thomas*, 169 Fed.Appx. 285, 286 (5th Cir. 2006) and other cases).

Plaintiff is correct that a suit may be brought against a state official in his official capacity when the suit seeks prospective injunctive or declaratory relief in order to end a continuing violation of federal law. *Jones v. Tyson Foods, Inc.*, 971 F.Supp. 671, 680 (N.D. Miss. 2013)(citing *Walker v. Livingston*, 381 Fed.Appx. 477, 478 (5th Cir. 2010)). In determining whether that limited exception to sovereign immunity applies, "… a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 2047 (1997)). Having done so here, the Court notes that the prayer for relief in Plaintiff's complaint does not seek injunctive relief, only declaratory relief with respect to the discrete incidents that allegedly occurred on July 29, 2015 (rec. doc. 1, pp. 7, 27-31), and not for any continuing conduct or conduct that is likely to be repeated in the future. The declaration that Plaintiff seeks regarding the alleged past constitutional violations of the moving Defendants is precisely the type of relief that is foreclosed under the teachings of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908). *Jones*, 971 F.Supp.2d at 681. In light of these authorities, it will be recommended that

Defendants' motion be granted and that Plaintiff's claims against them in their official capacity be dismissed.

In the second motion to dismiss that is presently before the Court, the five moving Defendants seek the dismissal of Plaintiff's claims against them on several fronts.[3/]  First, the five moving Defendants, just as the three other Defendants did, seek the dismissal of Plaintiff's claims for monetary damages against them in their official capacity.  For the reasons previously assigned in connection with the first motion to dismiss, the argument advanced by these five Defendants has merit and their motion should accordingly be granted in that regard.  The result is the same with respect to Plaintiff's request for declaratory relief against the five moving Defendants.

The five moving Defendants next argue that Plaintiff has pled insufficient facts to show that they violated his constitutional rights and that they are otherwise entitled to qualified immunity from Plaintiff's claims.  Before proceeding to the specifics of the arguments advanced by the five Defendants, the Court pauses to recall the standards governing motions brought under Rule 12(b)(6).

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949 (2009).  The Court

---

[3/] As noted earlier, Plaintiff has filed no memorandum in response to the five Defendants' motion to dismiss. As such, the Court may properly assume that he has no opposition to it. *Johnson v. Colvin*, No. 14-CV-0401, 2014 WL 4186790 at *1 n. 1 (E.D. La. Aug. 22, 2014)(citing Local Rule 7.5 and *Bean v. Barnhart*, 473 F.Supp.2d 739, 741 (E.D. Tex. 2007)); *Jones v. Larpenter*, No. 13-CV-0056, 2013 WL 1947243 at *1 n. 1 (E.D. La. Apr. 12, 2013), *adopted*, 2013 WL 1947188 (E.D. La. May 10, 2013)(same); *Lucas v. Crowe*, No. 11-CV-2752, 2013 WL 870514 at *1 n. 1 (E.D. La. Feb. 15, 2013), *adopted*, 2013 WL 870437 (E.D. La. Mar. 7, 2013)(same).

thus must identify pleadings that are conclusory and are not entitled to the assumption of truth and legal conclusions must be supported by the factual allegations that are pled. *Id.* at 677-78, 129 S.Ct. at 1949. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Id.* "Moreover, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Stewart*, 2014 WL 3498165 at *2 (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." (*Id.*).

In evaluating the sufficiency of the allegations set forth in Plaintiff's complaint, noteworthy is the fact that he begins by alleging, in a wholly conclusory fashion, that on the morning in question, Major Williams, Lieutenant Rigdon, Sergeant Tynes, and Sergeant Herbert approached his cell "… to initiate the beginning of their conspiracies to retaliate against me for two previous incidents …" (Rec. doc. 1, p. 8). As was discussed earlier, *supra* at p. 2 n. 1, of the four officials who entered Plaintiff's cell, only Major Williams and Lieutenant Rigdon had any involvement in the two previous incidents cited by Plaintiff and Williams' involvement in one of the two incidents was limited to simply being notified of the occurrence after the fact. Plaintiff's opening premise is thus factually flawed. That having

been said, in the Fifth Circuit, "'[p]laintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.'" *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991)(quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)). Plaintiff's conclusory allegations of a conspiracy fall into this category and nowhere does he show that the Defendants agreed to commit an illegal act. *See Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990).

With respect to Plaintiff's equally conclusory allegation that the Defendants were motivated by retaliatory intent, "[p]risoner's claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 Fed.Appx. 355, 358 (5th Cir.), *cert. denied*, ___ U.S. ___, 135 S.Ct. 60 (2104). In light of that heightened level of scrutiny, "'[a] prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Garner v. Moore*, 536 Fed.Appx. 446, 449 (5th Cir. 2013), *cert. denied*, ___ U.S. ___, 135 S.Ct. 90 (2014)(quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, ___ U.S. ___, 127 S.Ct. 596 (2006)).

In the matter at hand, Plaintiff does not allege that the Defendants were retaliating against him based on his exercise of a constitutional right. Rather, he alleges that they conspired to inflict harm upon him in retaliation for incidents that occurred several days earlier, incidents in which only one of the officials who entered his cell was directly involved. Plaintiff's "conclusory allegations of retaliatory mistreatment are an insufficient basis for §1983 relief." *Irby v. Cole*, 278 Fed.Appx. 315, 316 (5th Cir. 2008). No colorable claims of

9

conspiracy or retaliation lie here. The Court thus turns to the specific allegations made against each of the five moving Defendants.

As noted, Lieutenant Rigdon was one of the four officers who entered Plaintiff's cell on July 29, 2015. He was also involved in the prior incident on July 26, 2015, but does not appear to have been struck by Plaintiff during the course of that occurrence as was Lieutenant Ladner. Plaintiff alleges that Rigdon was present in his cell when Sergeant Herbert fitted him with a spit mask. Plaintiff does not contend that the mask was misapplied or that he suffered any injuries as a result of its use and even the requirement that a certain category of inmates wear spit masks whenever they are out of their cells passes constitutional muster. *Norman v. Hubert*, No. 07-CV-0387, 2009 WL 981100 at *2-3 (M.D. La. Mar. 18, 2009). Presumably, Lieutenant Rigdon was also present when Plaintiff was escorted from his cell "… in a very hysterical manner …" but once again, Plaintiff does not allege that he suffered any injury as a result of this occurrence and mere threatening language or gestures of a custodial officer do not, even if true, amount to a constitutional violation. *Patin v. LeBlanc*, No. 11-CV-3071, 2012 WL 3109402 at *13-14 (E.D. La. May 18, 2012)(and cases cited therein); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).

After being returned to his cell, Plaintiff alleges that he was sprayed with a chemical agent by Major Williams without justification. Plaintiff does not specifically allege that Rigdon was present when this occurred of, if he was, that he knew, with sufficient time and an opportunity to prevent it, the action that Williams allegedly took. *Smith v. Franklin*, No. 10-CV-0138, 2010 WL 5563507 at *2 (M.D. La. Dec. 6, 2010), *adopted*, 2011 WL 93856 (M.D. La. Jan. 10, 2011)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994)). Some time later that day, Plaintiff states that he was removed from his cell and was brought to the

"interlock" where Major Williams and Lieutenant Rigdon placed him "… into escort position without any further altercations." Shortly thereafter, as Plaintiff was being transported outside approaching the entrance to the chapel, Rigdon yelled for Plaintiff to stop resisting and Plaintiff was "clipped" from behind by Major Williams with Lieutenant Ladner and Captain Cleland quickly joining in the alleged assault. Once again, Plaintiff does not allege that Rigdon had advance knowledge of this occurrence or was reasonably postured to take steps to prevent it. Plaintiff states that he was then taken to the infirmary where he was secured in a restraint chair while he was tended to by medical personnel. Plaintiff does not allege that he suffered any injuries solely by virtue of the fact that he was placed in the restraint chair and the Fifth Circuit has recognized that the use of such a device does not violate constitutional norms where it is reasonably related to legitimate penological concerns such as the cessation of destructive or disruptive behavior. *Blakeney v. Rusk County Sheriff*, 89 Fed.Appx. 897, 899 (5th Cir. 2004)(pretrial detainee placed in restraint chair for 20 hours).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992). The Eighth Amendment also does not protect against the "de minimis" use of physical force so long as the use of force is not a sort that is "repugnant to the conscience of mankind." *Id.* at pp. 9-10, 112 S.Ct. at 1000. The facts pled by Plaintiff with respect to the alleged use of excessive force against him are simply insufficient to establish direct personal involvement on the part of Lieutenant Rigdon or under a failure-to-intervene theory so as to establish §1983 liability.

Like Lieutenant Rigdon, Sergeant Tynes was also one of the four correctional officers who entered Plaintiff's cell on July 29, 2015. However, unlike Rigdon, Tynes had no

11

involvement whatsoever in the prior incidents of July 26 and 27, 2015, thus undermining Plaintiff's retaliation theory. Presumably, Tynes was present when the spit mask was placed on his face by Sergeant Herbert and when he was escorted to the shower area, but no injuries are alleged by Plaintiff to have been suffered by him as a result. And like Rigdon, Plaintiff does not allege facts showing that Tynes had advance knowledge of Major Williams' reported deployment of a chemical agent or his awareness of it in sufficient time and with a reasonable opportunity to take action to prevent it. *Smith*, 2010 WL 5563507 at *2. Later that morning, Tynes responded to inquiries from Plaintiff regarding rumors about the use of the restraint chair. Beyond that, Plaintiff gives no clear indication that Tynes was directly involved in any of the other occurrences of July 29, 2015 of which he complains. Without such personal involvement or facts sufficient to support a failure-to-intervene theory, there is no basis upon which to hold Sergeant Tynes liable under §1983.

Next is Sergeant Herbert who was one of the four officials who entered Plaintiff's cell on July 29, 2015. Like Sergeant Tynes, Herbert had no involvement in the two incidents preceding July 29 and thus cannot be said to have acted with retaliatory intent. Plaintiff does allege that Herbert approached him in a "... reckless, malicious and sadistic manner ..." and subjected him to the "brutality" of having a spit mask put on. However, Plaintiff does not state that he suffered any injuries as a result of Herbert's alleged untoward mannerisms and, as noted earlier, mere threatening language and gestures of a correctional officer, even if true, do not amount to a constitutional violation. *Patin*, 2012 WL 3109402 at *13-14. Nor does Plaintiff allege that the spit mask left him unable to see or to properly breathe and the simple requirement of having prisoners don spit masks has been found to pass constitutional muster. *Norman*, 2009 WL 981100 at *2-3. Absent any further facts illuminating Herbert's

involvement in the matters of which complains herein, the facts that Plaintiff has pled do not point to a constitutional violation.

With respect to Sergeant Brian Powell, he was not alleged to have been included in the group of officials who entered Plaintiff's cell on the July 29, nor was he involved in either of the two prior incidents cited by Plaintiff. The extent of his involvement was that he was one of five officials who were reportedly overheard by another inmate discussing the use of the restraint chair. Later, Powell was heard to ask which officers Plaintiff had resisted. To the extent that the hearsay account that was relayed to Plaintiff was true, threatening utterances by prison officials are not actionable under §1983. *Patin*, 2012 WL 3109402 at *13-14.

Finally, the Court turns to Nurse Goff who, like Sergeant Powell, was in the group of five officials who were overheard by another inmate discussing the use of the restraint chair. Nurse Goff was not among the four officials who entered Plaintiff's cell on July 29, 2015 and he was not involved in either of the two incidents that occurred in the preceding days. The only other involvement that is attributed to him is that subsequent to Plaintiff's outside altercation with Major Williams, Lieutenant Ladner, and Captain Cleland, Plaintiff was brought to the infirmary where he was secured in the restraint chair and his blood was drawn by an unidentified nurse while Nurse Goff checked his vital signs. Notwithstanding these obvious diagnostic efforts by members of the RCC medical staff, Plaintiff alleges that not once have his injuries been treated or has the medical staff shown any concern for them. As for Goff, Plaintiff does not specifically allege that he requested and was denied needed medical care from him on any occasion. As Plaintiff admits that he was tended to by medical personnel following the altercation, his allegations "… address the nature of his treatment
13

and not the lack thereof" and thus fail to rise to the level of a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). That being the case, his motion dismiss, joined in by his four other co-Defendants, should be granted.[4]/ With the dismissals recommended herein, that will leave before the Court only Plaintiff's §1983 claims against Major Williams, Captain Cleland, and Lieutenant Ladner in their individual capacity as well as Plaintiff's state law claims against those Defendants.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to dismiss of Defendants, Major Jeff Williams, Captain Frank Cleland, and Lieutenant Shane Ladner, be granted and that Plaintiff's 42 U.S.C. §1983 claims against them in their official capacity be dismissed.

It is further recommended that the motion to dismiss of the five other Defendants be granted, that Plaintiff's federal claims against them be dismissed with prejudice, and that Plaintiff's state law claims against them be dismissed without prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[4]/ With the recommended dismissal of Plaintiff's federal claims against these five moving Defendants, Plaintiff's state law claims against them should be dismissed without prejudice. *Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999).

consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[5/]

New Orleans, Louisiana, this  27th  day of          January         , 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[5/] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.